**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x

Maria Ventura, individually on
behalf of herself and all others similarly
situated,

     Plaintiff,

v.

The Village Company, LLC,

     Defendant.

———————————————————— x

:   Case No.
:
:
:
:
:
:
:   **CLASS ACTION COMPLAINT**
:
:   <u>**JURY TRIAL DEMANDED**</u>
:
:
:

Plaintiff Maria Ventura (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.  This action seeks to remedy the deceptive and misleading business practices of The Village Company, LLC (hereinafter "Defendant") with respect to the marketing and sale of a body spray product throughout the state of New York and throughout the country, including, but not limited to, the following product (hereinafter the "Product"):

- Soft & Dri – Classic, Signature Soft Scent.

2.  Defendant does specifically list both the active and inactive ingredients of the Product but fails to disclose that the Product contains "benzene."

3.  Benzene is a widely recognized and incredibly dangerous substance, especially in the context of applying it to the skin.

1

4.     Benzene has been recognized, acknowledged, and accepted as a well-known health hazard and human carcinogen for approximately a century.[1]

5.      For example, benzene is known to harm the bone marrow and long exposure can lead to blood cancer, such as leukemia.[2]

6.     Consumers like the Plaintiff trust manufacturers such as Defendant to sell a Product that is safe and free from harmful known toxins, including benzene.

7.     Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the body spray they purchase will comply with its labeling and not contain any knowingly harmful substances like benzene.

8.     Defendant specifically manufactures, sells, and distributes the Product using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers.

9.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product—the packaging and labels themselves.  Consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Product.

10.     However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Product contains benzene, which Defendant does not list or mention anywhere on the Product's packaging or labeling.

11.     Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of what is in the Product when they purchased it.

---

[1] https://pubmed.ncbi.nlm.nih.gov/17718179/
[2] https://emergency.cdc.gov/agent/benzene/basics/facts.asp

12.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a body spray product contaminated with a known carcinogen.

13.     That is because Defendant's Product containing a known human carcinogen has no value.

14.     As set forth below, a body spray product that contains benzene is in no way safe for humans and are entirely worthless.

15.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant also breached and continues to breach its warranties regarding the Product and has been and continues to be unjustly enriched. Lastly, Plaintiff brings a claim for medical monitoring costs associated with testing, monitoring, and remediating the effects of their benzene exposure.

16.     Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

17.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in products that they and their family members put on and/or into their bodies. Companies such as Defendant have capitalized on consumers' desire for healthy and safe products, and indeed consumers are willing to pay, and have paid, a premium for these products.

18.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as benzene, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Product contains on the Product's packaging or labels.

19.     When consumers look at the Product's packaging there is no mention of benzene. Benzene is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of benzene in the Product.  This leads reasonable consumers to believe the Product does not contain dangerous chemicals like benzene.

20.     However, despite this, the Product contains benzene.

21.     21st century research has confirmed that there is no safe level of benzene exposure.[3]

22.     Benzene has been recognized, acknowledged, and accepted as a well-known health hazard and human carcinogen for approximately a century.[4]

23.     The National Toxicology Program (hereinafter "NTP") has regarded benzene as "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[5]  Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer (hereinafter "IARC").

24.     According to the Center for Disease Control ("CDC"), benzene can cause severe health issues such as anemia, immune system damage, and cancer.[6]

25.     Direct benzene exposure through the skin is particularly concerning.  For example, "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[7]

26.     Research has revealed that benzene can be absorbed into the body through the lungs and across the skin.[8]  This makes benzene exposure from body sprays especially troubling because the spray is put directly onto the skin, with the remnants flying through the air likely to be at least

---

[3] https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646
[4] https://pubmed.ncbi.nlm.nih.gov/17718179/
[5] https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf
[6] https://emergency.cdc.gov/agent/benzene/basics/facts.asp
[7] *Id.*
[8] https://www.atsdr.cdc.gov/toxprofiles/tp3-c1.pdf

4

partially breathed in by the user and absorbed into their lungs.  Thus, even a relatively low concentration limit can result in very high total benzene exposure.

27.     This is why recent research revealing benzene in Defendant's Product is particularly concerning.

28.     Valisure LLC recently published a study ("Study") that found that benzene has been found in many body sprays.[9]

29.     In addition to Plaintiff's own independent research, Valisure also found that Defendant's Product contained benzene.[10]

30.     The concerning part is that benzene exposure in the manufacturing process can be specifically avoided so that the Product could have absolutely no benzene in it.[11]

31.     Therefore, Defendant's false, misleading, omissions, and deceptive misrepresentations regarding the ingredients of the Product is likely to continue to deceive and mislead reasonable consumers and the public, as it has already deceived and misled Plaintiff and the Class Members.

32.     Defendant's concealment was material and intentional because people are concerned with what is in the products that they are putting onto and into their bodies.  Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed.  Defendant knows that if it had not omitted that the Product contained benzene, then Plaintiff and the Class would not have purchased the Product at all.

---

[9] https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-3.pdf
[10] *Id.*
[11] *Id.* at 1.

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the state of New York and The Village Company, LLC is a citizen of the state of Minnesota; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

34.     This Court has personal jurisdiction over Defendant because Defendant conducts and transact business in the state of New York, contract to supply goods within the state of New York, and supply goods within the state of New York.

35.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

36.     Plaintiff Maria Ventura is a citizen and resident of the state of New York.  During the applicable statute of limitations period, Plaintiff purchased Defendant's Product that contained benzene.

37.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the Product containing benzene, Plaintiff would not have been willing to purchase the Product.  Plaintiff purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product.  The Product Plaintiff received was worthless because it contains the known carcinogen benzene.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

38.     Defendant, The Village Company, LLC, is a domestic corporation with its headquarters and principal place of business located in Eden Prairie, Minnesota.  The Village Company, LLC conducts business throughout the United States, including this district.   The Village Company, LLC's line of body spray products, including the Product purchased by Plaintiff and Class Members, is available at retail stores throughout New York and the United States. Defendant created and/or authorized the false, misleading, and deceptive manufacturing, marketing, advertising, and distributing of the Product.

## CLASS ALLEGATIONS

39.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

40.     The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period.

41.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the state of New York at any time during the Class Period (the "New York Subclass").

42.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

43.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

44.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

45.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

    b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

    c.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Product;

    d.   Whether Defendant's false and misleading statements and omissions concerning its Product was likely to deceive the public; and

    e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

46.     <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same

deceptive, misleading conduct and purchased Defendant's Product.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

47.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

48.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

49.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

        a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

        b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

        c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

        d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Product.

50.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

51.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in the Product.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.  Plaintiff would purchase the Product again if it did not include benzene.

52.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a. <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Product has been purchased by thousands of people throughout the United States.

b. <u>Commonality</u>: Questions of law and fact are common to members of the Class.  Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

> i. Resolution of the issues presented in the 23(b)(3) class;

> ii. Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

> iii. Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel the Product?

c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e., Defendant's deceptive and misleading marketing, labeling, and advertising practices).  Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendant's Product which was sold unfairly and deceptively to consumers throughout the United States.

d. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights.  In addition, Plaintiff and the Class are represented by counsel who are competent and experienced in both consumer protection and class action litigation.

53.     Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class and Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e., Defendant has marketed its Product using the same misleading and deceptive labeling to all of the Class Members).

54.     Plaintiff also seeks to include an injunction to require the implementation and funding of a blood serum testing program for the Plaintiff and Class Members to test for the

presence of benzene in their blood serum; and the implementation and funding of a medical monitoring program for Plaintiff and Class Members sufficient to monitor Plaintiff and Class Members' health to ensure they are adequately monitored for the harmful effects of benzene in the human body.

55.     Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the true nature of the contents of the Product.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

56.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

57.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

58.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Product.

59.     There is no adequate remedy at law.

60.     Defendant misleadingly, inaccurately, and deceptively advertise and market its Product to consumers.

61.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Product has benzene—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Product and to use the Product when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

62.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased a product that was mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

63.     Defendant's advertising and Product's packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

64.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

65.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

66.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

67.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce
> or in the furnishing of any service in this state is hereby declared
> unlawful.

68.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or
> of the kind, character, terms or conditions of any employment
> opportunity if such advertising is misleading in a material respect.
> In determining whether any advertising is misleading, there shall be
> taken into account (among other things) not only representations
> made by statement, word, design, device, sound or any combination
> thereof, but also the extent to which the advertising fails to reveal
> facts material in the light of such representations with respect to the
> commodity or employment to which the advertising relates under
> the conditions proscribed in said advertisement, or under such
> conditions as are customary or usual . . .

69.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Product inasmuch as it misrepresents that the Product is safe for use and doesn't list that the Product contains benzene.

70.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased a Product that was mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

71.     Defendant's advertising, packaging, and Product's labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

72.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

73.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

14

74.     Defendant made the material misrepresentations described in this Complaint in its advertising and on the Product's packaging and labeling.

75.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

76.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

77.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is safe for use and does not contain benzene.

79.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

80.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

81.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

82.     Defendant knowingly breached the express warranties by including benzene in the Product sold to Plaintiff and the Class without properly notifying them of its inclusion in the Product.

83.     Within a reasonable time after it knew or should have known, Defendant did not change the Product's labels to include benzene in the ingredient list.

84.     Defendant thereby breached the following state warranty laws:

     a.     Code of Ala. § 7-2-313;

     b.     Alaska Stat. § 45.02.313;

     c.     A.R.S. § 47-2313;

     d.     A.C.A. § 4-2-313;

     e.     Cal. Comm. Code § 2313;

     f.     Colo. Rev. Stat. § 4-2-313;

     g.     Conn. Gen. Stat. § 42a-2-313;

     h.     6 Del. C. § 2-313;

     i.     D.C. Code § 28:2-313;

     j.     Fla. Stat. § 672.313;

     k.     O.C.G.A. § 11-2-313;

     l.     H.R.S. § 490:2-313;

     m.     Idaho Code § 28-2-313;

     n.     810 I.L.C.S. 5/2-313;

     o.     Ind. Code § 26-1-2-313;

     p.     Iowa Code § 554.2313;

     q.     K.S.A. § 84-2-313;

r.  K.R.S. § 355.2-313;

s.  11 M.R.S. § 2-313;

t.  Md. Commercial Law Code Ann. § 2-313;

u.  106 Mass. Gen. Laws Ann. § 2-313;

v.  M.C.L.S. § 440.2313;

w.  Minn. Stat. § 336.2-313;

x.  Miss. Code Ann. § 75-2-313;

y.  R.S. Mo. § 400.2-313;

z.  Mont. Code Anno. § 30-2-313;

aa.  Neb. Rev. Stat. § 2-313;

bb.  Nev. Rev. Stat. Ann. § 104.2313;

cc.  R.S.A. 382-A:2-313;

dd.  N.J. Stat. Ann. § 12A:2-313;

ee.  N.M. Stat. Ann. § 55-2-313;

ff.  N.Y. U.C.C. Law § 2-313;

gg.  N.C. Gen. Stat. § 25-2-313;

hh.  N.D. Cent. Code § 41-02-30;

ii.  II. O.R.C. Ann. § 1302.26;

jj.  12A Okl. St. § 2-313;

kk.  Or. Rev. Stat. § 72-3130;

ll.  13 Pa. Rev. Stat. § 72-3130;

mm.  R.I. Gen. Laws § 6A-2-313;

nn.  S.C. Code Ann. § 36-2-313;

oo.   S.D. Codified Laws, § 57A-2-313;

pp.   Tenn. Code Ann. § 47-2-313;

qq.   Tex. Bus. & Com. Code § 2.313;

rr.   Utah Code Ann. § 70A-2-313;

ss.   9A V.S.A. § 2-313;

tt.   Va. Code Ann. § 59.1-504.2;

uu.   Wash. Rev. Code Ann. § 6A.2-313;

vv.   W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313; and

xx.   Wyo. Stat. § 34.1-2-313.

85.   As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Product, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiff and All Class Members)

86.   Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

87.   Defendant sold and Plaintiff and Class Members purchased the Product.

88.   When sold by Defendant, the Product was not merchantable, did not pass without objection in the trade under the label description, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on its container or label.

89.     Because the Product contains benzene, it was in no way safe for use as a body spray product.

90.     As a direct result of Defendant's Product being unfit for intended purpose and/or otherwise not merchantable, Plaintiff and Class members were damaged because they would not have purchased Defendant's Product had they known the true facts regarding the benzene content.

**FIFTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(On Behalf of Plaintiff and All Class Members)**

91.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92.     Defendant concealed and failed to disclose on the Product's packaging and labeling the material fact that the Product contained benzene, and that the Product was not safe or healthy for use.

93.     Defendant had knowledge that the Product contained benzene, and that the Product was not safe or healthy for use.

94.     Defendant had a duty to disclose that the Product contained benzene, and that the Product was not safe or healthy for use.

95.     Defendant had superior knowledge or means of knowledge available to them and knew that Plaintiff and Class Members would rely upon the representations and omissions of Defendant regarding the quality and ingredients of its Product.  Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains benzene, especially at the point of sale.

96.     Defendant's concealment was material and intentional because people are concerned with what is in the product that they are putting onto and into their bodies.  Consumers

such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy.  Defendant knows that if it had not omitted that the Product contained benzene, then Plaintiff and the Class would not have purchased the Product at all; however, Defendant wanted to increase sales and profits.

97.     Defendant's concealment misled Plaintiff and the Class as to the true nature of what they were buying and putting onto and into their bodies.

98.     Defendant fraudulently concealed that the Product contained benzene and that the Product was not safe or healthy for use.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### MEDICAL MONITORING
**(On Behalf of Plaintiff and All Class Members)**

99.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

100.    As a result of Defendant's negligence, Plaintiff and Class Members have been exposed to the carcinogen benzene.

101.    As a proximate result of Plaintiff and Class Members' exposure to benzene, Plaintiff and Class Members have a significantly increased risk of serious medical complications, including ailments such as bone marrow harm and blood cancer (such as leukemia).

102.    A monitoring procedure exists that makes the early detection of these types of ailments possible.

103.    The prescribed monitoring program is reasonably necessary according to contemporary scientific principles.

104.     Defendant's acts were willful, wanton, or reckless and conducted with a reckless indifference to the health and rights of Plaintiff and Class Members.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

105.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

106.     Plaintiff, on behalf of herself and consumers nationwide, brings a claim for unjust enrichment.

107.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling the Product while misrepresenting and omitting material facts.

108.     Defendant's unlawful conduct, as described in this Complaint, allowed Defendant to knowingly realize substantial revenues from selling the Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

109.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Product, which was not as Defendant represented them to be.

110.     It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

111.     Plaintiff and Class Members seek establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the Federal Rules of Civil Procedure;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with New York's relevant consumer protection laws;

(c) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to benzene;

(d) Awarding monetary damages and treble damages;

(e) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(f) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(g) Awarding punitive damages;

(h) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(i) Granting such other and further relief as the Court may deem just and proper.

Dated: December 1, 2021

THE SULTZER LAW GROUP P.C.

By:      Jason P. Sultzer /s/
_____
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

David C. Magagna Jr., Esq.
Charles E. Schaffer, Esq.
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

*Counsel for Plaintiff and the Class*